[No. 2800, Sept. 4, 1924. On Rehearing Aug. 13, 1927.]

## FIRST NAT. BANK OF ALBUQUERQUE v. DUNBAR et al

### [258 Pac. 817.]

#### SYLLABUS BY THE COURT

1. There is no equitable jurisdiction to set aside an order of the probate court, approving an executor's final report and ordering a distribution of the assets; there being an adequate and complete remedy by appeal to the district court.

[1] 15CJ p. 1021 n. 83; 21CJ p. 35 n. 15; p. 36 n. 16; 24CJ p. 1035 n. 17; p. 1044 n. 29. [2] 15CJ p. 859 n. 71; p. 860 n. 75; p. 861 n. 92; p. 863 n. 41. [3] 15CJ p. 1131 n. 31; p. 1133 n. 39; 38 Cyc p. 213 n. 80 New.

2. Former statutes and decisions reviewed, and held, that it is competent for the Legislature to regulate the respective jurisdictions of probate and district courts, and to provide, as it has done by section 1430, Code 1915, that the probate court has original jurisdiction in the administration of estates, and the district court appellate jurisdiction only, except where some situation arises requiring equitable intervention.

Appeal from District Court, Bernalillo County; Judge.

Action by the First National Bank of Albuuerque against Ralph S. Dunbar, as executor of the estate of E. H. Dunbar, deceased, and another. From a judgment for plaintfif, defendants appeal. Reversed, and remanded, with directions.

J. A. Miller and Simms & Botts, all of Albuquerque, for appellants.

A. B. McMillen, of **Albuquerque**, for appellee.

PARKER, C. J. The appellee, hereinafter styled plaintiff, filed its amended complaint against the appellant Dunbar, as executor, and the appellant Fidelity & Deposit Company of Maryland, as surety upon his executor's bond, hereinafter styled defendants. It appears that plaintiff presented a claim against the estate, which claim was allowed and ordered paid in due course of administration. Thereafter the defendant Dunbar filed in the probate court his final report of his doings as such executor, and in said report falsely represented to said probate court that said claim of plaintiff had been paid in full, whereas, in truth and in fact, nothing had been paid upon said claim. Thereupon said Dunbar procured said probate court to fix May 24, 1919, as the time for the hearing and considering of said final report. Said Dunbar gave notice of such time for hearing and considering said final report by posting on the front door of the county courthouse of Bernalillo county a notice of the same. On said May 24, said Dunbar procured from the probate court an order approving the said final report and directing him to "distribute all balance remaining in his hands pro rata among such claimants as appeared by the said re-

port to have been approved by this court and to remain unpaid.'' Dunbar then distributed the funds among the creditors of the estate, **excluding** the plaintiff from any participation therein. Plaintiff prayed that an accounting be had of and concerning the assets of said estate and the expenditures made by said Dunbar as such executor, and the amount of fees justly due him, and the amount of claims subject to payment, and the pro rata share or amount which should be paid to the plaintiff, and prayed for a judgment against both defendants in such amount as the court finds is rightfully due the plaintiff, and for judgment over against the defendant Dunbar for such amount as may be payable in excess of the penalty of said bond, and for general equitable relief.

Defendants demurred to the complaint, upon the ground that the same failed to state facts sufficient to constitute a cause of action against them, and that it appeared upon the face of the amended complaint that the court had no jurisdiction of the subject-matter of the action. The court overruled this demurrer, and the defendants answered the bill of complaint, to which answer a reply was filed. A trial was had before the court, and a judgment was awarded the plaintiff, to the effect that the order of distribution above mentioned was void and of no effect as against the plaintiff, and that the plaintiff have and recover from the defendants the sum of $1,123.27, together with interest. The defendants have brought the case here by appeal.

[1] The original complaint was filed in this case on June 19, 1919, which was 25 days subseuent to the order of the probate court approving the executor's final report and making the order of distribution. At that time the plaintiff had the right of appeal to the district court. A trial de novo could have been had in the district court, and the correctness of the judgment, approving the final report and ordering distribution, could have been there reviewed. See chapter 99, Laws 1915. It is apparent that the plaintiff had an adequate and complete remedy at law by appeal at the time this

suit was instituted. The district court, upon such an appeal, had power to vacate and set aside the order approving the executor's final report and making distribution of the assets of the estate, and to order him to make a pro rata distribution to all of the creditors, including the plaintiff, which is all of the relief to which the plaintiff was entitled.

It is a fundamental principle that courts of equity have no jurisdiction to entertain a cause of actⁱⁿ n where there exists at the time an adequate and complete remedy at law. 1 Pom. Eq. Juris. (4th Ed.) §§ 222, 178. Where there is a right of appeal in which an erroneous judgment may be corrected, there is no jurisdiction in a court of equity to set aside the judgment, as was done in this case. Counsel for plaintiff argue that the remedy by appeal was inadequate, because the funds of the estate had already been distributed by the executor to claimants other than the plaintiff. This argument seems to be fallacious. The executor, upon an appeal to the district court, and a correction of the order confirming the final report and ordering distribution, was still chargeable with the money due to the plaintiff, and his bondsman was likewise chargeable to make good the amount adjudged against the executor. It is apparent that the demurrer to the complaint should have been sustained, on the ground that there was no equitable jurisdiction to entertain the cause. See Barka v. Hopewell 29 N. M. 166, 219 p. 799.

It follows, from all of the foregoing, that there is error in the judgment, and that it should be reversed, and the cause remanded, with directions to sustain the demurrer and dismiss the complaint; and it is so ordered.

BRATTON, J., and R. R. RYAN, District Judge, concur.

BOTTS, J., having been of counsel below, did not participate.

On Rehearing.

PARKER C. J.     [2]     A motion for rehearing has

been filed and granted, and the cause has been rear-gued. It is strenuously urged that we are entirely wrong in our conclusion for the reason that we have misunderstood the nature and extent of the respective jurisdiction of the probate and district courts. We deem it proper to overhaul the whole subject with the view of settling a much vexed question.

The first statute on the subject of jurisdiction of probate courts is section 21 of the Kearney Code (page 95, C. L. 1884). This section was carried into C. L. 1865, c. 21, § 3, and C. L. 1884, §562, which is as follows:

"The several probate judges shall have exclusive original jurisdiction in all cases relative to the probate of last wills and testaments; the granting letters testamentary and of administration, and the repealing the same; the appointing and displacing guardians of orphans and persons of unsound mind; to binding out apprentices; to settlement and allowance of the accounts of executors, administrators, and guardians; to hear and determine all controversies respecting wills; the right of executorship, administration or guardianship, respecting the duties or accounts of executors, administrators or guardians; and all controversies between master and those bound to them; to hear and determine all suits and proceedings instituted against executors or administrators upon any demand against the estate of their testator or intestate; Provided, that when any such demand shall exceed one hundred dollars, the claimant may sue either before the probate court or in the district court, in the first place."

This was the law under which the case of Perea v. Barela, 5 N. M. 458, 23 P. 766, and 6 N. M. 239, 27 p. 507, was decided. In that case it was pointed out by Judge Lee, in the opinion of the court on rehearing, that by the very terms of the statute the plaintiff might resort to the district court in the first instance, her claim being for more than $100. It was further pointed out that the plaintiff might resort to equity to set aside her receipt to the executor, obtained from her by fraud, and equity, having been invoked for one purpose, would retain jurisdiction for all purposes to do complete justice between the parties.

[3]   It is further stated that under the Organic Act of the territory, the district courts were granted the

same jurisdiction as that possessed by the circuit and district courts of the United States, which was the same as that possessed by the High Court of Chancery in England, among whose powers was the power to enforce trusts, and to compel executors and administrators to account and distribute the assets in their hands. This statement is erroneous, in that it fails to discriminate between the district courts as created by the act of Congress and exercising their jurisdiction in causes arising under the Constitution and laws of the United States, and those courts sitting for the trial of causes arising under the laws of the territory. In the former case, those courts were clothed with the same jurisdiction as was possessed by the circuit and district courts of the United States, which included the jurisdiction over the administration of estates. But in the latter case no such jurisdiction is conferred by the congressional legislation, and the jurisdiction is limited to causes in which the United States is not a party, and is confined to causes arising under the laws of the territory. The citation of the City of Panama, 101 U. S. 453, 25 L. Ed. 1061, makes clear this failure of the court to draw this distinction, as that was a case under the admiralty laws of the United States, a matter of purely federal jurisdiction. A fine discussion of the distinction in the two jurisdictions of the district courts, in cases where they are administering the laws of the United States and in cases where they are administering the laws of the territory, is to be found in Lincoln, Lucky & Lee Mining Company v. District Court in First Judicial District, 7 N. M. 486, 38 P. 580, where it is pointed out that originally the district courts created by the Organic Act exercised both federal and territorial powers, and that in pursuance of the authority granted by section 1874, R. S. U. S. (U. S. Comp. St. § 3464) the territorial Legislature in 1859 established territorial district courts in each of the counties then existing in the territory, and provided for the transfer thereto of all causes not arising under the federal laws. Since that time the two jurisdictions have always been separate and distinct, although the courts were pre-

sided over by the same justice, and the former jurisdiction under the Organic Act over territorial causes has been withdrawn from the district courts sitting for the trial of causes arising under the Constitution and Laws of the United States.

Reliance is had in both the original opinion and the one on rehearing in the Perea-Barela Case upon Ferris v. Higley, 20 Wall. 375, 22 L. Ed. 383, but we doubt it is applicable to the facts in the Perea-Barela Case, or the present case. In that case the Legislature of Utah had attempted to confer upon the probate courts of that territory general common law and chancery jurisdiction in both civil and criminal causes commensurate with that possessed by the district courts. The Supreme Court of the United States held simply that such legislation was contrary to the Organic Act of the territory, which vested all such jurisdiction in the d strict courts, and that such jurisdiction was foreign to the general nature of the jurisdiction of probate courts as organized and developed in this country. The court, however, did say:

"Nor are we called on to deny that the functions and powers of the probate courts may be more specifically defined by territorial statutes within the limit of the general idea of the nature of probate courts, or that certain duties not strictly of that character may be imposed on them by that legislation.

The court thus recognized the powers of the territorial Legislature to regulate and define the jurisdiction of the probate courts within the general scope of the jurisdiction of such courts as known and recognized in this country. See Clayton v. Utah, 132 U. S. 632, 10 S. Ct. 190, 33 L. Ed. 455, where Ferris v. Higley is reviewed and interpreted in accordance with the above view. See, also, Hornbuckle v. Toombs, 18 Wall. 648, 21 L. Ed. 966, in which it is held that, subject to such exceptions as expressed in the Organic Acts of the territories, the territorial Legislatures have power to regulate the jurisdiction of the territorial courts. We believe that the decision of Perea-Barela has not always been understood by the members of the bar, and pos-

sibly not always by the territorial Supreme Court. All that was decided was that, under the circumstances in that case, there was equitable jurisdiction to relieve the plaintiff from her accord and satisfaction, although, as heretofore pointed out, there is much in the argument of the court to cause one to conclude that the court intended to go further. However, a case is to be interpreted by what it decides, not the reasons assigned for the decision or the arguments in support thereof, unless the same are sound. The result reached in that case was undoubtedly sound. The statute remained in this form until by section 48 of chapter 90, Laws 1889, now section 1430, Code 1915, it was changed to read as follows:

"The probate courts shall have exclusive original jurisdiction in all the following causes, to wit: The probate of last wills and testaments, the granting letters testamentary and of administration and the repealing or the revocation of the same, the appointment and removal of administrators, the appointment and removal of guardians of orphans and persons of unsound mind, the binding out of apprentices, the settlement and allowance of accounts of executors, administrators and guardians, the hearing and determination of all controversies * * * between master and those bound to him, the hearing and determination of all controversies respecting any order, judgment or decree in such probate courts with reference to any of the foregoing matters of which the probate courts are herein given exclusive original jurisdiction, and no suit shall be prosecuted or begun in any district court to review or in any manner inquire into or reopen or set aside any such order, judgment or decree, and no such order, judgment or decree shall be reviewed or examined in any district court except upon an appeal taken in the manner provided by law."

It thus appears that provision for concurrent jurisdiction in cases involving more than $100 was eliminated, and the Legislature displayed a determination to strip the district court of all original jurisdiction in these matters and to limit the jurisdiction to review on appeal. This statute stood unchanged down to statehood, and is codified as section 1430, Code 1915, and is still in force. In 1913 in Candelaria v. Miera, 18 N. M. 107, 134 P. 829, we had before us the question as to whether a bill in equity could be maintained to open and vacate an executor's account for fraud and for an

accounting. In that case, as to certain items in question, the claim was made that the items having been approved by the probate court, they could be questioned only on appeal. The argument was disallowed, and the court, quoting from Perea v. Barela, upheld the proceeding. In that case we have re-examined the record and note therefrom that it was a clear case for equitable intervention. The legatees were infants. The executor was guilty of actual fraud, and there was no remedy by appeal, and an accounting was necessary in order to ascertain what was due the plaintiffs. It is true, the statutory notice was published of the time for hearing the so-called final report of the executor, but the report was so imperfect and fraudulent as to be no report at all. An unfortunate citation and quotation from the Perea-Barela Case is made in the opinion to the effect that a trust, fraudulently administered, is all that is necessary to give a court of equity jurisdiction. This statement was correct in connection with the facts in that case, but is too broad for universal application. It is only where plaintiff is otherwise remediless that equity has and may take jurisdiction of the administration of estates and the accounts of executors and administrators.

Since statehood we have had several cases involving this proposition. In Michael v. Bush, 26 N. M. 612, 195 P. 904, a creditor of an estate attempted to sue an administrator and his bondsman at law before the estate was closed, and we held, there being no equitable consideration present, the statute (section 1430, Code 1915) applied, and the district court had no jurisdiction to entertain the action. This case was cited with approval in Romero v. Hopewell, 28 N. M. 259-269, 210 P. 231. In Barka v. Hopewell, 29 N. M. 166, 219 P. 799, the distinction between euitable and legal actions is recognized, and it is held that in the former the district court has original jurisdiction in proper cases, and in the latter appellate jurisdiction only.

An enlightening discussion of this whole subject, showing the situation in all of the states as to the juris-

diction of probate courts and equity courts in these matters, is contained in section 1154 of Pomeroy's Equity Jurisprudence (4th Ed.). The author groups the states into three classes: First, those in which the original equitable jurisdiction over administrations remains unabridged, concurrent with that possessed by the probate courts; second, those states in which the jurisdiction of the probate courts over everything pertaining to the regular administration of estates is virtually exclusive; and, third, those states in which the equitable jurisdiction is not concurrent, but is simply auxiliary or ancillary. The author places New Mexico in the first class, citing Perea-Barela, 6 N. M. 239, 27 P. 507.

Professor Pomeroy, in placing New Mexico in the first class, relied upon the decision in Perea v. Barela, above cited, and his attention was evidently not called to some of the considerations herein mentioned.

It follows from all of the foregoing that the judgment of the district court is erroneous, and that our former opinion in this case should be adhered to, and that the cause should be remanded, with directions to dismiss the complaint, and it is so ordered.

BICKLEY and WATSON, JJ., concur.